HEARD APRIL TERM, 1875.

## CONWAY *vs.* CUNNINGHAM.

The construction of written instruments is for the Court, and, as a general rule, parol evidence as to the intention will not be received.

A bond conditioned for the payment of "two thousand dollars (or so much thereof as may be due upon an account stated between them) within nine months from the date hereof and all interest that may be due" was given as a guaranty for goods to be furnished a merchant, though his name did not appear in the contract: *Held*, That the guaranty was not intended to limit the amount of goods to be furnished, but to limit to $2,000, the amount for which the guarantor was to be liable at the end of nine months.

BEFORE CARPENTER, J., AT KERSHAW, JANUARY TERM, 1875.

This was an action by Anna M. Conway against William R. Cunningham to enjoin the defendant from selling, under a power of sale contained in a mortgage, the mortgaged property, and to deliver up the mortgage to be canceled. The case was as follows:

On the 7th day of October, 1872, the plaintiff gave to the defendant her bond in the penal sum of $4,000, with a condition thereunder written as follows: "The condition of the above obligation is such, that if the above bound Anna M. Conway, her heirs, executors and administrators, shall and do well and truly pay or cause to be paid unto the said Wm. R. Cunningham, his certain attorney, executors, administrators or assigns, the full and just sum of two thousand dollars (or so much thereof as may be due upon an account stated between them) within nine months after the date hereof, with all

interest that may be due, then this obligation to cease, determine and be utterly null and void, or else to remain in full force and virtue;" and also a mortgage of a lot in the town of Camden to secure the payment of the bond. The mortgage contained a power of sale on default of payment. The complaint alleged that the plaintiff is the wife of Edward J. Conway, a merchant of the town of Camden, in this State, and the defendant is a merchant of the city of Baltimore; that at the time the said bond and mortgage were given the said Edward J. Conway became the agent of the defendant for the purpose of conducting the business of merchandise for him in said town; that they represented to the plaintiff that the amount of goods to be shipped by the defendant to the said Edward J. Conway was not to exceed in the whole cost thereof the sum of $2,000; that this was done to induce the plaintiff to become the guarantor of her husband for goods to that amount, and that, confiding in said representations, she gave the said bond and mortgage with the express understanding that she became liable for goods to be shipped to the amount of $2,000 and no more; that of the amount so guaranteed there has been paid the sum of $1,462.02, leaving a balance of $538.98 which the plaintiff is ready and willing to pay; that the plaintiff is informed and believes that the advances made by the defendant to the said Edward J. Conway amounted to $2,814.10; that the defendant now pretends that his dealings were directly with the plaintiff, that the advances were made to her, and that she is liable under said bond and mortgage for the whole balance due on account of said advances, and that he has advertised the said lot for sale under the power contained in said mortgage. The prayer of the complaint was that the defendant be enjoined from selling said lot, and that on payment of the said admitted balance of $535.98 the said bond and mortgage be delivered up to be canceled.

The defendant by his answer stated that the said Edward J. Conway was indebted to him at the time said bond and mortgage were given in the sum of $252.76, and that the said bond and mortgage were given to secure the payment of the said sum and also as a security for such advances as he might within nine months thereafter make to the said Edward J. Conway, the plaintiff's liability at the end of nine months not to exceed the sum of $2,000; that there was no stipulation, understanding or agreement that the amount of goods to be shipped was not to exceed said sum of $2,000; that the amount of goods shipped within the nine months was $3,089.86,

inclusive of the said sum of $252.76 due at the time the said bond and mortgage were given, and that after deducting payments to the amount of $1,464.02 there remained a balance due the defendant of $1,605.84 and interest to the amount of $54.79—in all $1,660.63—and he exhibited with his answer a statement of the account.

It was admitted, at the hearing, that the defendant had been allowed to take judgment in this action against the plaintiff for the admitted balance of $525.98, and that it had been paid.

The defendant offered evidence to sustain certain allegations of the answer, but His Honor refused to hear it and made an order that the temporary injunction theretofore granted be made perpetual, and that each party pay his own costs.

The defendants appealed on grounds as follows:

1. Because His Honor the presiding Judge should have heard testimony before deciding, as tendered by defendant's counsel in support of the allegations of the answer.

2. Because the true construction of the bond obliges the plaintiff to pay the defendant the balance due of his account as claimed in the answer.

3. Because His Honor the presiding Judge having declined to hear testimony in support of the answer of defendant, the statements of the answer, for the purposes of this case, must be taken as true; and it is respectfully submitted that, under the circumstances there stated, the plaintiff was bound to pay the balance of said account as claimed by the defendant.

*Kershaw*, for appellants.

*Leitner & Dunlap*, contra.

November 18, 1875. The opinion of the Court was delivered by

MOSES, C. J. It is not to be denied, as a general rule, that the construction of all written instruments belongs to the Court. Where, too, there is no ambiguity in the terms of the contract, parol testimony will not be allowed to prove an intention different from that which is to be inferred from the language which the parties have adopted to express their purpose. While these principles urged on the part of the appellee must be admitted, it

is not perceived how their application can aid her resistance of the motion submitted by the appellant.

The bond expresses the condition upon the performance of which by the obligor it was to be null and void; and if extrinsic evidence was to be resorted to for the purpose of showing that the words in which it is expressed lead to an inference which was not intended, the necessity of a recourse to it was on the appellee and not on the appellant. What is there in the bond to show that it was executed as a security for the debt of Edward J. Conway already due and as a guaranty for the payment of merchandise to be thereafter furnished him? It is on the face of it a mere money bond, whereby the obligor binds herself to pay a certain sum to the obligee within a certain time, or so much as may be due at the expiration of such time, "on an account stated between them." There is nothing to point to a transaction in which any third party was to be concerned. The obligor was forced to refer to extrinsic evidence not only to show the nature of the liability assumed by her bond but the payment made by her husband, on which she relies as a bar to any further claim by the appellant.

The account current rendered by the appellant accompanies the complaint, and it exhibits not only the amount paid by the husband but the extent of goods supplied, and its correctness is admitted. In fact, it is the evidence on which she relies for proof of the payment of $1,464.02, which, with the $535.98, the amount of the judgment heretofore recovered *in this case*, discharged her, as she contends, from all further liability on the bond. As the allegations in the complaint, of the circumstances which attended and led to the execution of the bond, were directly contradicted by the answer in the most material points, we are necessarily forced to conclude that the presiding Judge rejected the offer of evidence to sustain the answer because he proposed to render judgment by a construction of the instrument from its terms, independent of any extrinsic testimony. Looking alone to the instrument, we differ from his conclusion.

For what possible purpose were the words included in the parenthesis inserted, unless to reduce the two thousand dollars, for the payment of which the bond was conditioned, by the state of the "account," at the termination of the nine months, if it therefrom appeared that the amount due was less than that limited by the bond? The obligor could not be held liable, in any event, for more

than two thousand dollars, while she might be relieved from the full amount by showing at the end of the nine months that "the account stated" proved that a less sum was due. The security was to extend to and cover all dealings within the time the bond was to run, but the sum for which the obligor was to be bound was limited to that which it expressed. Technical words are employed: "account stated," which implies that an accounting was to be had by which the debit and credit side were to be adjusted and a balance due ascertained. It looked to a continuance of dealings of some kind for the space of nine months, and an obligation to pay the balance due "on the account stated," provided it did not exceed two thousand dollars.

It is contended that the words "within nine months after the date thereof" were only to designate the time within which the two thousand dollars were to be paid.

This view entirely ignored the words included in the parenthesis, which were inserted to protect the obligor from the payment of the whole of the said sum, if, on the account stated, it should appear that less was due. Without the insertion of the words, she would have been at liberty to reduce the sum named in the condition by any actual payment made on the bond either by herself or on her account.

The rule is well established, that in the construction of a contract regard must be had to it as a whole, and "every part of it shall be, if possible, made to take effect."—Chit. on Contr., 84. The words referred to would not have been inserted unless some design had been intended by their use. So far from a purpose to restrict the whole dealing to $2,000, they point to a result, to follow future transactions, which might reduce the sum to be collected on the bond below the amount named in the condition.

Assuming (as we have done) that the judgment of the Circuit Court rested on its construction of the instrument, without regard to the extrinsic circumstances referred to, both in the complaint and answer, we have not felt at liberty to allow them to influence our conclusion. In the argument before us, they were discussed on both sides, and the force they were to have on our decision was pressed according to the opposing views of the parties who urged them. We may be allowed, however, to say that confidence in the conclusion which we have reached is not the least weakened by the fact that it was a guaranty for goods to be furnished a merchant with

which to carry on business, and that the credit was not only to continue for nine months, but that the liability incurred by the guarantor to the extent of two thousand dollars was to be reduced at the end of that time by the "account stated" of the dealings between the parties in whose favor the guaranty was given and the party to be secured by it, provided the balance exhibited as due fell short of the maxmium sum for the security of which the bond was executed.

There is no dispute as to the amount of goods supplied by the appellant, of the payments made to him in cash or otherwise. It is conceded that the account current accompanying the complaint contains a true and correct statement. It is not necessary that a reference should be ordered to ascertain a fact admitted by the parties. The amount due on the bond must, therefore, be held to be the sum of $1,660.63, with interest on $1,605.84 from October 11, 1873, until paid, less the sum of $535.98 which appears to have been paid since complaint filed, with interest thereon from the date of such payment.

The mortgage provides the mode for its foreclosure. The motion is granted and the complaint dismissed. With the order of the Circuit Court as to the costs, we will not interfere; it will, therefore, remain of force.